## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| TRICIA ANN BAYSINGER F/K/A | § | |
| TRICIA A. CRAWFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. _____ |
| v. | § | |
| | § | With Jury Demand Endorsed |
| BOUNCE ENERGY, INC., | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Tricia Ann Baysinger f/k/a Tricia A. Crawford ("Plaintiff"), by and through counsel, for her Complaint against Bounce Energy, Inc. ("Bounce" or "Defendant"), states as follows:

### I. INTRODUCTION

1.      Defendant engaged in willful and malicious actions against Plaintiff in furtherance of its efforts to collect an unsecured debt from her which was legally uncollectible, during Plaintiff's active bankruptcy case and after the debt was discharged as to her personal liability, such actions being an integral part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors, collecting on debts included and discharged as to the debtors' personal liability in their respective bankruptcy cases, and selling discharged debt to third party collectors, knowing such collectors will pursue *in personam* collections on discharged debt.

2.      Plaintiff claims Defendant violated: 1) Tex. Fin. Code § 392.001 *et. seq.,* known as the Texas Debt Collection Act ("TDCA"); 2) Plaintiff's common law privacy rights; and 3) 11 U.S.C.  §§ 362 and 524(a), respectively, the bankruptcy automatic stay and discharge injunction. Plaintiff seeks to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

3.      Plaintiff is a natural person residing in Collin County, Texas and a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c); and the TDCA, Tex. Fin. Code § 392.001(1).

4.      Defendant is a foreign corporation that may be served by delivering a summons to its registered agent, Corporate Connections Network, Inc., 5444 Westheimer #1000, Houston, TX 77056.

5.      Defendant is a "person," a "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3)(6) and (7).

6.      The debt Defendant was attempting to collect from Plaintiff was a "consumer debt," as defined by Tex. Fin. Code § 392.001(2).

## III. JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 15 U.S.C. § 1681p.

8.      Venue is proper this district, because Defendant transacts business in this district, Plaintiff filed her bankruptcy case in this district, and the conduct complained of occurred in this district.

## IV. FACTUAL ALLEGATIONS

-2-

**A.      The Subject Unsecured Debt Was Included in Plaintiff's Bankruptcy Case and Discharged as to Her Personal Liability.**

9.      On October 25, 2012, Plaintiff filed for bankruptcy under Chapter 7 of the U.S. Bankruptcy Code in case number 12-42865 ("Bankruptcy Case") in the Eastern District of Texas Bankruptcy Court ("Bankruptcy Court").

10.     On Schedule "F" filed with her bankruptcy petition, "**SCHEDULE F – CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS**," Plaintiff listed Defendant as the creditor for a consumer credit account for an unsecured claim and debt.

11.     A copy of Plaintiff's Schedule "F" is attached hereto as Exhibit "A."

12.     On October 25, 2012, Plaintiff also filed in her Bankruptcy Case a mailing matrix which provided Defendant's correct address.

13.     On or about October 28, 2012, the Bankruptcy Noticing Center for the Bankruptcy Court sent Defendant a copy of the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") for the Bankruptcy Case, by first class mail, to Defendant. The 341 Notice provided notice that Plaintiff filed her Bankruptcy Case under Chapter 7 of the Bankruptcy Code and warned all creditors in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. §362.

14.     A true and correct copy of the 341 Notice is attached hereto as Exhibit "B."

15.     The 341 Notice, Official Form 9A, warned all creditors, in conspicuous language, "Creditors Generally May Not Take Certain Actions" and "[p]rohibited collection actions are listed in Bankruptcy Code 362. Also, it informed creditors, in relevant part, that "[c]ommon examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money …….".

-3-

16.     The United States Postal Service did not return the 341 Notice sent to Defendant, creating a presumption it was received.

17.     On or about October 29, 2012, Defendant sent Plaintiff an e-mail demanding payment on the Account, informing him there was a "Total Amount Due $242.56" and a "Payment Due Date 11/14/2012," including "**Convenient Payment Options**" and instructions on how to pay online, by phone, by mail or in person. It also states, "[p]lease pay by your due date to avoid any late fees or penalties."

18.     A redacted copy of the email correspondence Defendant sent to Plaintiff on or about 10/29/12 is attached hereto as Exhibit "C."

19.     On February 6, 2013, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order"). The Discharge Order followed Official Form B18, including the explanatory language contained therein. The Discharge Order discharged Plaintiff from any liability for the debt created by the Account. Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "**Collection of Discharged Debts Prohibited**" and that "a creditor is not permitted to contact a debtor by mail, phone, or otherwise . . . or take any other action to collect a discharged debt from the debtor."

20.     On February 8, 2013, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to Bounce Energy by first class mail. This mailing, which was not returned, constituted notice to Bounce Energy of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction imposed by 11 U.S.C. §524(a).

21.     A true and correct copy of the Discharge Order is attached hereto as Exhibit "D."

22.     At no time during the pendency of Plaintiff's Bankruptcy Case did Defendant or any other person or entity object to or dispute the details or completeness of the claim on the Account listed on Schedule "F" to Plaintiff's Petition.

23.     At no time during the pendency of the Bankruptcy Case or after entry of the Discharge Order did Plaintiff reaffirm the debt on the Account with any person or entity.

24.     At no time during the pendency of Plaintiff's Bankruptcy Case or after entry of the Discharge Order was the debt on the Account declared by the Bankruptcy Court to be non-dischargeable.

**B.     During Plaintiff's Bankruptcy Case, Defendant Engaged in Prohibited Conduct and Attempted to Collect on the Debt from Plaintiff.**

25.     On or about October 29, 2012, Defendant sent Plaintiff correspondence by email informing her about a bill on the Account, demanding the "Total Amount Due $242.56" and informing her of the "Payment Due Date 11/14/2012." The e-mail informs Plaintiff about "Convenient Payment Options," including online payment, pay by phone, pay by mail or pay in person instructions. The e-mail also warns Plaintiff to "pay by your due date to avoid any late fees or penalties."

26.     A redacted copy of the email dated 10/29/12 Defendant sent to Plaintiff is attached hereto as Exhibit "E."

**C.     After the Discharge of the Debt in Plaintiff's Bankruptcy Case, Defendant Attempted to Collect the Discharged Debt from Plaintiff and Made Harassing and Offensive Contacts with Her.**

27.     Following the February 6, 2013 entry of the Discharge Order in Plaintiff's Bankruptcy Case, Defendant, or its authorized collection agent(s), attempted to collect the discharged debt from Plaintiff and engaged in prohibited debt collection activity against her by:

(1) making collection calls to Plaintiff; (2) sending Plaintiff collection letters, emails and notices on the Account, demanding payment or actions to coerce or deceive her to make payment on the discharged debt; (3) selling the debt on the Account to a third party collector, knowing such third party would try to collect the discharged debt from Plaintiff; and (4) misrepresenting the status of the discharged debt to Plaintiff to deceive and coerce payment from her.

     **1)**     **After the Debt was Discharged in Plaintiff's Bankruptcy Case, Defendant Made Illegal Collection Calls to her in Furtherance of its Attempts to Collect on the Discharged Debt.**

28.     On at least four (4) occasions after Plaintiff received her bankruptcy discharge, Defendant made prohibited collection calls to her on her cellular phone regarding the Account, demanding payment of the discharged debt or to coerce or deceive Plaintiff to make payment of the discharged debt to Defendant.

29.     On or about June 25, 2013, Defendant called Plaintiff on her cellular phone seeking payment on the Account, even though the debt had been discharged.

30.     On or about July 19, 2013, Defendant called Plaintiff on her cellular phone seeking payment on the Account, even though the debt had been discharged.

31.     On or about July 26, 2013, Defendant called Plaintiff on her cellular phone seeking payment on the Account, even though the debt had been discharged.

32.     On or about August 9, 2013, Defendant called Plaintiff on her cellular phone seeking payment on the Account, even though the debt had been discharged.

     **2)**     **After the Debt was Discharged in Plaintiff's Bankruptcy Case, Defendant Assigned and Sold the Discharged Account to Third Parties to Collect the Discharged Debt from the Plaintiff.**

-6-

33.     Despite the change in the legal status of the Account when Plaintiff received her bankruptcy discharge, which, by operation of law, made the debt legally uncollectible and closed the Account, Defendant, post-discharge, assigned the Account for collection to third parties, MKS Financial Solutions, Inc. ("MTS") and PTR Group, Inc. ("PTR"), and later sold it to Orion Portfolio Services, LLC ("Orion") for collection, who then assigned the account to Transworld Systems, Inc. ("TSI") for collections.

> **3)     After the Debt was Discharged in Plaintiff's Bankruptcy Case, Defendant or its Collection Agent(s) Sent Plaintiff Correspondences Demanding Payment or Actions from Plaintiff to Coerce or Deceive Her into Paying the Discharged Debt.**

34.     After the discharge was granted in Plaintiff's Bankruptcy Case, Defendant and its agents or representatives sent Plaintiff correspondences on the Account demanding her payment, even though Defendant knew the debt on the Account had been discharged, effectively rendering a zero balance due and owing on the Account, and the debt was no longer legally collectible from Plaintiff and Defendant was forbidden from contacting Plaintiff for collections.

35.     After Plaintiff received her bankruptcy discharge, Defendant hired MKS to collect on the Account.

36.     On or about April 3, 2013, MKS, Defendant's duly authorized agent acting on Defendant's behalf, sent Plaintiff a demand and debt validation letter on the Account by email, listing the Creditor as Defendant. The letter informs Plaintiff that Defendant placed the Account with MKS for collection and instructs her to direct payment of the "**Amount Owed: $ 582.88**" or inquiries to MKS at the provided address or phone number. The letter demands Plaintiff mail her payment in full to MKS or call to make a payment by phone. Additionally, it informs Plaintiff that unless she disputes the validity of the debt or any portion of it, MKS will assume it is valid. It also

informs Plaintiff accounts that are undisputed or unpaid after the validation period, may become part of her national credit file, which it warns may impair her ability to obtain credit in the future. Further, it includes the Fair Debt Collections Act Mini-Miranda, stating "[t]his communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose ("Mini-Miranda Warning").

37.     A redacted copy of the demand letter dated April 3, 2013 MKS sent to Plaintiff is attached hereto as Exhibit "F."

38.     On or about April 11, 2013, MKS sent Plaintiff a demand and debt validation letter, identical to the letter it sent to Plaintiff by email dated April 3, 2013, again, demanding payment on the Account for the "**Amount Owed: $ 582.88**."

39.     A redacted copy of the demand letter dated April 11, 2013 MKS sent to Plaintiff is attached hereto as Exhibit "G."

40.     After Plaintiff received her bankruptcy discharge, Defendant hired PRT to collect on the Account.

41.     On or about July 17, 2013, PRT, Defendant's duly authorized agent acting on Defendant's behalf, sent Plaintiff a demand and debt validation letter on the Account by email, listing the Creditor as Defendant. The letter informs Plaintiff that Defendant placed the Account with PRT for collection and instructs her to direct the "**Amount Owed: $ 582.88**" or inquiries to PRT at the provided address or phone number. The letter also demands Plaintiff mail her payment in full to PRT or call PRT to make a payment by phone. Also, it informs Plaintiff that unless she disputes the validity of the debt or any portion of it, PRT will assume it is valid. Further, it informs Plaintiff accounts that are undisputed or unpaid after the validation period, may become part of

her national credit file, which it warns may impair her ability to obtain credit in the future. Additionally, it includes the Mini-Miranda Warning.

42.     A redacted copy of the demand letter dated July 17, 2013 that PRT sent to Plaintiff is attached hereto as Exhibit "H."

    **4)**    **After the Debt was Discharged in Plaintiff's Bankruptcy Case, Defendant Sold the Discharged Account to a Third-Party Debt Buyer, Aware that the Third Party Intended to Pursue Collection of the Discharged Debt from Plaintiff.**

43.     After July 17, 2013, Defendant, aware the debt on the Account had been discharged, sold the discharged debt to Orion, or another third-party debt buyer, which in-turn sold the debt to Orion, knowing such third-party would seek to collect the discharged debt from Plaintiff.

44.     On or about December 11, 2019, TSI, collecting on the discharged debt for Orion, sent Plaintiff a demand and debt validation letter on the discharged debt underlying the Account, complete with a detachable, self-addressed payment coupon and return envelope, instructing Plaintiff to "PLEASE RETURN THIS PORTION WITH YOUR PAYMENT." The letter also notes the creditor is Orion and demands payment of the "Balance Due: $314.71," which it states has been placed with TSI for collection.  Also, the letter informs Plaintiff that unless she disputes the validity of the debt or any portion of it, TSI will assume it is valid. Further, the letter informs Plaintiff that she can also make payment online. The letter also warns Plaintiff, "IF YOU DO NOT PAY THE DEBT, ORION PORTFOLIO SERVICES LLC MAY CONTINUE TO REPORT IT TO CREDIT REPORTING AGENCIES AS UNPAID FOR AS LONG AS THE LAW PERMITS THIS REPORTING." Additionally, it includes the Mini-Miranda Warning.

45.     A redacted copy of the demand letter dated December 11, 2019 that TSI sent to Plaintiff is attached hereto as Exhibit "I."

46.     On or about January 28, 2020, TSI sent Plaintiff a collection letter stating the "Balance Due: $314.71," offering her "a quick way to resolve your account(s) at 20% off the current balance due in up to 6 monthly payments." The letter informs Plaintiff that the offer is a "Tax Season offer" and she can put a tax refund to good use to eliminate debt, but the offer will expire in 45 days from the date of the letter. The letter also requests Plaintiff call TSI to try to establish an alternative repayment plan. It also instructs Plaintiff to mail her payment with the payment coupon or call TSI at the toll-free phone number provided. It also includes the Mini-Miranda warning.

47.     A redacted copy of the letter dated January 28, 2020 that TSI sent to Plaintiff is attached hereto as Exhibit "J."

48.     On February 25, 2020, TSI, in furtherance of its collection efforts on the discharged debt from Plaintiff, reported false, negative information about the debt on the Account to TransUnion and Equifax credit bureaus, reporting to TransUnion that the discharged debt was for an "Open Account" with "a balance of $314 that was due and payable, and the account was "In Collection;" and reporting to Equifax the account for the discharged debt was "Open" had a balance of $314 and "In Collection" and that the discharged debt was incurred for "Medical and Health Care" purposes.

49.      Redacted and relevant excerpts from Plaintiff's March 2, 2020 TransUnion and Equifax credit reports showing Defendant's reporting, are attached hereto as Exhibit "K" and "L," respectively.

50.     Inasmuch as there was no open and active account between Defendant, TSI and Plaintiff, post-discharge, and given the fact Plaintiff had no business relationships with TSI, nor

did she ever seek credit from TSI, it is obvious TSI's only purpose for reporting the Account to the CRAs was to further its and Defendant's illegal, post-discharge efforts to collect on the discharged Account.

## V. Grounds for Relief - Count I

### Texas Finance Code – Texas Debt Collection Act (TDCA)

51.     Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs Nos. 9 through 50, above, as if rewritten here in their entirety.

52.     Defendant, acting itself or through its duly authorized agent or representative, has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

    a)    Tex. Fin. Code § 392.301(a)(8), prohibits Defendant from taking an action prohibited by law. Inasmuch as the bankruptcy discharge injunction prohibits anyone from attempting to collect debts discharged in bankruptcy *in personam* the common law protects Plaintiff's privacy rights and the FCRA protects consumers credit rights and proper credit reporting by creditors; Defendant's post-discharge actions against Plaintiff, including all of the above-detailed sending of correspondences and making collection calls to Plaintiff, threatening to report negative information to the CRAs to be reported on Plaintiff's credit reports and selling the discharged debt to Orion, also violated the TDCA;

    b)    Tex. Fin. Code § 392.304(a)(8), prohibits misrepresenting the character, extent, or amount of Plaintiff's debt. Defendant misrepresented to Plaintiff that the debt on the Account, which had been discharged, resulting in a zero balance due and owing and closing the account, was past due, owing and collectible from Plaintiff in post-discharge: correspondences and collection calls to Plaintiff; these were misrepresentations of the character, extent or amount of the subject debt, in violation of the TDCA; and

    c)    Tex. Fin. Code § 392.304(a)(19), prohibits Defendant's use of false representations or deceptive means to collect a debt, for the reasons stated in the preceding paragraphs (a and b), Defendant intentionally tried to coerce or deceive Plaintiff into paying the debt, while Defendant knew the debt on the Account was discharged as to Plaintiff's personal liability in her Bankruptcy Case, rendering the

debt legally uncollectible from Plaintiff and forbidding collection actions on it.

53.     Under Tex. Fin. Code Ann. § 392.403, Defendant's actions make it liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees. Also, Plaintiff's injuries resulted from Defendant's malice, actual fraud and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

54.     Because of Defendant's conduct, or the conduct of its duly authorized agent or representative acting on its behalf, Plaintiff was forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

## VI. GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY

55.     Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs Nos. 9 through 50, above, as if rewritten here in their entirety.

56.     Defendant was forbidden from attempting to collect on the discharged debt from Plaintiff, and Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendant, or agents and representatives acting on behalf of Defendant, in furtherance of Defendant's attempts to coerce or deceive Plaintiff into paying the discharged debt. Thus, Defendant contacting Plaintiff through its offensive and forbidden post-discharge emails and correspondences and contacting her through its post-discharge collection calls, were invasions of Plaintiff's privacy rights. The wrongful acts of Defendant caused injury to Plaintiff.

57.     Plaintiff's injuries resulted from Defendant's malice, which entitles Plaintiff to recover exemplary damages pursuant to Texas Civil Practice and Remedies Code §41.003(a).

## VII. GROUNDS FOR RELIEF- COUNTS III AND IV

### VIOLATIONS OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION

58.     Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs Nos. 9 through 50, above, as if set forth herein in their entirety.

59.     At all material times, Defendant had actual knowledge of Plaintiff's Bankruptcy Case and of the discharge of the debt on the Account.

60.     Defendant failed to cease its debt collection activity on the Account and debt at issue after Plaintiff filed for bankruptcy protection, as evidenced by Defendant sending Plaintiff the subject e-mail demand letter during the pendency of her Bankruptcy Case, which was a violation of the automatic stay as set forth in 11 U.S.C. §362, prohibiting all collections against Plaintiff on pre-petition debt, including, but not limited to, the Account, while her Bankruptcy Case was pending.

61.     At all post-discharge times material to this proceeding, Defendant had actual knowledge about the discharge of the debt as to Plaintiff's personal liability on the Account in Plaintiff's Bankruptcy Case. The totality of Defendant's post-discharge actions at issue were violations of the discharge injunction and actionable under 11 U.S.C. §524(a)(1)-(3).

62.     Defendant knew the debt had been discharged but, nevertheless, attempted to collect it from Plaintiff, as evidenced by Defendant's post-discharge collection actions at issue, both acting itself or through its collection agent(s), including making collection calls to Plaintiff, sending her demand letters and emails and selling the discharged debt to a third-party debt buyer, knowing such collector would take *in personam* collection actions against Plaintiff on the discharged debt, which it/they did through TSI's post-discharge sending of demand letter(s) and

false, derogatory credit reporting on the debt to be reported on Plaintiff's credit reports with the CRA(s).

63.     Defendant's actions were willful acts in furtherance of its efforts to collect the discharged debt from Plaintiff, in violation of the discharge injunction imposed by 11 U.S.C. §524(a). Further, Defendant's acts were harassing and attempts to coerce and deceive Plaintiff to pay the discharged debt. Defendant's failure to comply with the aforesaid laws, despite Defendant's being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of Plaintiff's discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

64.     Defendant violated the part of the Bankruptcy Court's Automatic Stay pertaining to 11 U.S.C. § 362(a)(1) which "operates as a stay, applicable to all entities, of—the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arouse before the commencement of the case under this title;…", regarding Defendant attempting to collect on the Account from Plaintiff during her Bankruptcy Case, as evidenced by the collection email(s) it sent to Plaintiff, *see* attached Exhibit C, during the pendency of the Bankruptcy Case.

65.     The actions of Defendant, or agents or representatives acting on its behalf, constituted harassment and coercive and/or deceptive actions taken to collect discharged debt from Plaintiff, in gross violation of the discharge injunction imposed by 11 U.S.C. §524(a)(1)-(3).

-14-

66.     Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the bankruptcy filed by Plaintiff. After this prima facie showing by Plaintiff, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability. Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on her claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendants. Any allegation of a good faith exception should not be allowed.

67.     Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. §524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived . . . ".

68.     There are no exceptions under 11 U.S.C. §362, 11 U.S.C. §524, or other provisions of the United States Bankruptcy Code, or other applicable law that permit the conduct of Defendant at issue with regard to the automatic stay or discharge injunction, as stated above.

69.

70.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint,

none of which occurred here. No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

71.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court. Any burdening of Plaintiff with an obligation to police the misconduct of Defendant would be a complete derogation of the law. It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance. Any attempt by Defendant to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendants. No defense of failure to mitigate should be allowed.

72.     Plaintiff has been injured and damaged by Defendant's actions, and Plaintiff is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of violations of 11 U.S.C. §§ 362 and 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## VIII. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

73.     Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendant, the principal, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, including, but not limited to, MTS, PTR, Orion

and TSI, which imputes liability on Defendant for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.

## IX. DAMAGES

74.     In addition to any damages previously stated hereinabove, the conduct of Defendant has proximately caused Plaintiff past and future monetary loss; past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state; and other damages, evidence for all of which will be presented to the jury. Moreover, dealing with the consequences of Defendant's actions has cost Plaintiff time and mental energy, which are precious to her.

75.     At all relevant times, Defendant knew, and it continues to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectible, but Defendant made a corporate decision to act knowingly, willfully, maliciously, and contrary to its knowledge of bankruptcy law, to attempt to collect on the debt it knew had been discharged as a result of Plaintiff's Bankruptcy Case.

76.     Plaintiff believes that, after reasonable discovery in this case, she will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff, with the actual knowledge that such actions were in violation of the law.

77.      Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant has been involved in dozens, if not hundreds, of disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws it is well-aware.

78.     Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts discharged in bankruptcy, including, but not limited to, furnishing inaccurate and misleading information to the CRA's about accounts discharged in bankruptcy. Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant. Moreover, Plaintiff's injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

79.     Due to Defendant's conduct, Plaintiff was forced to hire counsel, and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Tricia Ann Baysinger, prays the Court:

A.     Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the TDCA, Plaintiff's common law privacy rights, and the automatic stay and discharge injunction;

B      Find that appropriate circumstances exist for an award of punitive damages to Plaintiff.

C.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.     Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,


*/s/ James J. Manchee*
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
2745 North Dallas Parkway, Suite 420
Plano, Texas 75093
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF


## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

April 15 ,2020                    */s/ James J. Manchee*
Date                             James J. Manchee